[No. G046044. Fourth Dist., Div. Three. Nov. 15, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
AJIT BERNARD RAJANAYAGAM, Defendant and Appellant.

COUNSEL

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Frank Ospino, Public Defender (Orange), Jean M. Wilkinson, Chief Deputy Public Defender, Denise M. Gragg and Sharon Petrosino, Assistant Public Defenders, and Matthew Missakian, Deputy Public Defender, for Orange County Public Defenders Office as Amicus Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**O'LEARY, P. J.**—Ajit Bernard Rajanayagam appeals from a judgment after he pled guilty to elder and dependent adult abuse (Pen. Code, § 368, subd. (b)(1))[1] (count 1), and aggravated assault (§ 245, subd. (a)(1)) (count 2). Rajanayagam argues the trial court erred in failing to award him enhanced presentence conduct credits under the current iteration of section 4019, amended pursuant to the Criminal Justice Realignment Act of 2011 (Realignment Act), and thus he is entitled to additional conduct credits. We disagree and affirm the judgment.

## FACTS

On August 20, 2011, Rajanayagam grabbed his octogenarian mother by the neck, pushed her to the ground, and restrained her by holding her neck. Police officers arrested him the following day.

On October 31, 2011, the trial court reduced counts 1 and 2 to misdemeanors, and Rajanayagam pled guilty to both offenses. In his sentencing brief, Rajanayagam asserted he was entitled to section 4019 conduct credit under two formulas: (1) from the date of the offense to September 30, 2011, at the rate required by the prior law, and (2) from October 1, 2011, forward at the rate required by the current law. He claimed that pursuant to principles of statutory construction[2] section 4019's enhanced conduct credit formula applied to all time served on or after October 1, 2011, regardless of the offense

[1] All further undesignated statutory references are to the Penal Code.

[2] Rajanayagam did not raise an equal protection claim in his sentencing brief.

date. The trial court placed Rajanayagam on informal probation for three years and ordered him to serve 180 days in jail. Applying section 4019 as it existed on the date of the offense, the court awarded him 109 days credit, 73 actual credits, and 36 conduct credits.

## DISCUSSION

In his opening brief, Rajanayagam argues the operative date for determining whether a defendant is eligible for enhanced conduct credits pursuant to the current version of section 4019 is the sentencing date, and not the offense date. The Attorney General, relying on principles of statutory construction, responds Rajanayagam was not entitled to enhanced conduct credits because he committed his offense before October 1, 2011. The Attorney General also notes Rajanayagam did not raise any constitutional claims. In his reply brief, Rajanayagam concedes he is not entitled to enhanced conduct credits based on statutory construction principles. He asserts, however, denial of enhanced conduct credits violates his equal protection rights and he is entitled to retroactive enhanced conduct credits of 37 days.

After the California Supreme Court filed *People v. Brown* (2012) 54 Cal.4th 314, 318 [142 Cal.Rptr.3d 824, 278 P.3d 1182] (*Brown*), a case where it concluded the amendment to section 4019 that became operative on January 25, 2010, applied prospectively only and equal protection principles did not require retroactive application, we invited the parties to file supplemental letter briefs on the effect of that case on the matter before us. Rajanayagam filed a supplemental letter brief conceding we are bound by *Brown, supra*, 54 Cal.4th 314 (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]).

The Orange County Public Defender filed a motion for leave to file an amicus curiae brief, which we granted. The Orange County Public Defender argues that pursuant to equal protection principles, Rajanayagam was entitled to enhanced presentence conduct credits for time served beginning on October 1, 2011, the operative date of the amendment. The public defender claims that regardless of whether a defendant commits an offense before or after October 1, 2011, all defendants who are in local custody on and after October 1, 2011, have the same incentive to work and behave, and there is no rational reason for treating the two groups differently. Rajanayagam filed another supplemental letter brief joining in the public defender's argument. The Attorney General responds Rajanayagam is not entitled to enhanced conduct credits based on a plain reading of the statute. Additionally, the Attorney General states that assuming the two groups are similarly situated, the selection of an operative date was rationally related to a legitimate state interest.

Thus, the issue as framed is this: Is Rajanayagam entitled to an additional 31 days of conduct credits under statutory construction or equal protection principles? We conclude he is not.

## A. *Statutory Construction*[3]

 A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities, including partial days. (§ 2900.5, subd. (a); see *People v. Smith* (1989) 211 Cal.App.3d 523, 526 [259 Cal.Rptr. 515].) Calculation of custody credit begins on the day of arrest and continues through the day of sentencing. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735 [268 Cal.Rptr. 486].)

 Section 4019 provides that a criminal defendant may earn additional presentence credit against his or her sentence for performing assigned labor (§ 4019, subd. (b)), and for complying with applicable rules and regulations (§ 4019, subd. (c)). These presentence credits are collectively referred to as conduct credits. (*People v. Dieck* (2009) 46 Cal.4th 934, 939 [95 Cal.Rptr.3d 408, 209 P.3d 623].) The purpose of conduct credits is to affect inmates' behavior by providing them with incentives to work and behave. (*Brown, supra,* 54 Cal.4th at pp. 327–329.) A trial court awards presentence credits at the time of sentencing. (See Cal. Rules of Court, rules 4.310, 4.472.)

Before January 25, 2010, under section 4019, defendants were entitled to one-for-two conduct credits, which is two days for every four days of actual time served in presentence custody. (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, pp. 4553, 4554.) Effective January 25, 2010, the Legislature amended section 4019 to accelerate the accrual of presentence conduct credit such that certain defendants earned one-for-one conduct credits, which is two days of conduct credit for every two days in custody. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50.) The Legislature increased the accrual rate to reduce expenditures in response to Governor Arnold Schwarzenegger's declaration of a fiscal emergency. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 3X 18 (2009–2010 3d Ex. Sess.) Jan. 12, 2009; *People v. Garcia* (2012) 209 Cal.App.4th 530, 535 [147 Cal.Rptr.3d 221].)

Effective September 28, 2010, the Legislature again amended section 4019. (Stats. 2010, ch. 426, §§ 1, 2, 5.) Subdivisions (b) and (g) restored the less generous one-for-two presentence conduct credit calculation that had been in effect prior to the January 25, 2010, amendment. Thus, all local prisoners

---

[3] We understand Rajanayagam concedes he is not entitled to additional credits pursuant to section 4019, subdivision (h)'s plain language, but a thorough discussion of the credit issues requires that we discuss its statutory construction.

could earn two days of conduct credit for every four days in jail. The Legislature restored the conduct credits to one-for-two because the increased conduct credits reduced available jail time and undercut the effort to provide an adequate custodial alternative to prison. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 76 (2009–2010 Reg. Sess.) as amended Aug. 20, 2010.)

The Legislature next amended section 4019 in Assembly Bill No. 109 (2011–2012 Reg. Sess.) (hereafter referred to as Assembly Bill No. 109), which was part of the Realignment Act. The Legislature's stated purpose for the Realignment Act "is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 679 [143 Cal.Rptr.3d 742] (*Cruz*); see § 17.5.) Assembly Bill No. 109 authorized conduct credit for all local prisoners at the rate of two days for every two days spent in local presentence custody. (§ 4019, subds. (b) & (c), as amended by Stats. 2011, ch. 15, § 482, eff. Apr. 4, 2011, operative Oct. 1, 2011.) The Legislature declared, "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody." (§ 4019, subd. (f), as amended by Stats. 2011, ch. 15, § 482.) Assembly Bill No. 109 described its prospective nature and effective date of the new presentence conduct credit calculations standards: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after July 1, 2011. Any days earned by a prisoner prior to July 1, 2011, shall be calculated at the rate required by the prior law." (Stats. 2011, ch. 15, § 482.) The Legislative Counsel's Digest states Assembly Bill No. 109 was to take effect immediately. (Legis. Counsel's Dig., Assem. Bill No. 109 (2011–2012 Reg. Sess.).) Governor Edmund G. Brown, Jr., signed Assembly Bill No. 109 on April 4, 2011.

Before Assembly Bill No. 109's operative date of July 1, 2011, Governor Brown signed Assembly Bill No. 117. Assembly Bill No. 117 (2011–2012 Reg. Sess.) (hereafter referred to as Assembly Bill No. 117) retained the enhanced conduct credit provision but it changed the effective date to October 1, 2011. (Former § 4019, subd. (h), as amended by Stats. 2011, ch. 39, § 53.)

On September 20, 2011, Governor Brown signed Assembly Bill No. 1X 17 (2011–2012 1st Ex. Sess.) (hereafter referred to as Assembly Bill No. 1X 17), which was enrolled by the Secretary of State on September 21, 2011. (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 35.) Assembly Bill No. 1X 17 is the current version of section 4019. Assembly Bill No. 1X 17

again retained the enhanced conduct credit provision—four days is deemed to have been served for every two days spent in actual custody. (§ 4019, subd. (f).) As relevant here, section 4019, subdivision (h) (hereafter referred to as subdivision (h)), provides: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

■ In *Brown, supra*, 54 Cal.4th 314, the California Supreme Court addressed the issue of whether a prior version of section 4019 that became operative on January 25, 2010, should be given retroactive effect to permit prisoners who served time in local custody before that date to earn conduct credits at the increased rate. The court stated: "Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear with respect to a particular statute, the Legislature's generally applicable declaration in section 3 provides the default rule: 'No part of [the Penal Code] is retroactive, unless expressly so declared.' We have described section 3, and its identical counterparts in other codes [citation], as codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citations.] In applying this principle, we have been cautious not to infer retroactive intent from vague phrases and broad, general language in statutes. [Citations.] Consequently, ' "a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' [Citation.]" (*Brown, supra*, 54 Cal.4th at p. 319.)

The court later reiterated: "[T]he language of section 3 erects a strong presumption of prospective operation, codifying the principle that, 'in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citations.] Accordingly, ' "a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' [Citation.] . . . '. . . Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.' [Citation.]" (*Brown, supra*, 54 Cal.4th at p. 324.)

Despite the fact the Legislature included no statement of intent in that regard in the amendment (see Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50, eff. Jan. 25, 2010), the *Brown* court held the amendment applied prospectively only, meaning qualified prisoners in local custody first became eligible to earn conduct credit at the increased rate beginning on the amendment's operative date. (*Brown, supra*, 54 Cal.4th at p. 318.) We turn now to the current version of section 4019.

■ Subdivision (h)'s first sentence states: "The changes to this section enacted by the act that added this subdivision shall apply *prospectively* and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp *for a crime committed on or after October 1, 2011*." (Italics added.) After declaring itself to operate "prospectively," the first sentence explicitly states the conduct credit amendment applies only to defendants whose crimes were committed "on or after October 1, 2011." (Subd. (h).) By the first sentence's plain language, section 4019 would not apply to Rajanayagam because he committed his crime *prior* to October 1, 2011. Thus, the first sentence leads unmistakably to the conclusion Rajanayagam is not entitled to conduct credit at the enhanced rate. Subdivision (h)'s second sentence, however, confuses matters. But the application of well-settled principles of statutory construction confirms our conclusion Rajanayagam is not entitled to enhanced conduct credits for time served on or after October 1, 2011, because he committed his crime before the effective date.

Subdivision (h)'s second sentence provides: "Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (Subd. (h).) Arguably the statement "[a]ny days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law" implies any days earned by a defendant *after* October 1, 2011, shall be calculated at the rate required by the current law, *regardless of when the offense was committed*. But to read the second sentence in this manner renders meaningless the first sentence. This we cannot do.

■ " ' "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.' " (*Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269 [18 Cal.Rptr.2d 120] (*Rodriguez*); see 2A Sutherland, Statutory Construction (7th ed. 2007) § 46.6, pp. 230–244, fns. omitted.) Therefore, we cannot read the second sentence to imply any days earned by a defendant *after* October 1, 2011, shall be calculated at the enhanced conduct credit rate for an offense committed before October 1, 2011, because that would render the first sentence superfluous.

■ Instead, another well-established rule of statutory construction supports our interpretation of subdivision (h). " 'A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed.' " (*Rodriguez, supra,* 14 Cal.App.4th at p. 1268; see 2A Sutherland, Statutory Construction, *supra,* § 46.5, pp. 189–201.)

As we explain above, subdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who committed their crimes on or after October 1, 2011. Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011. Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1553 [145 Cal.Rptr.3d 24].) To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence.[4]

■ We recognize the Legislature in drafting subdivision (h)'s second sentence used the word "earned." And it is impossible to earn presentence credits for an offense that has not yet been committed. But reading the first and second sentences together, the implication is the enhanced conduct credit provision applies to defendants who committed crimes before October 1, 2011, but who served time in local custody after that date. To isolate the verbiage of the second sentence would defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well-settled principles of statutory construction. In conclusion, we find the enhanced conduct credit provision applies *only* to those defendants who committed their crimes on or after October 1, 2011.

---

[4] *Brown, supra,* 54 Cal.4th at page 322, includes language that supports the conclusion the Supreme Court approved earning conduct credits at two different rates and thus the date when a defendant committed an offense is not dispositive. But in *Brown* the Legislature did not expressly declare whether the January 25, 2010, amendment was to apply retroactively or prospectively. (*Id.* at p. 320.) Here, the Legislature did expressly state the current version of section 4019 is to apply prospectively only to defendants who commit their offenses on or after October 1, 2011.

## B. *Equal Protection*

■ The first prerequisite to a meritorious claim under the equal protection clause is a showing the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200 [39 Cal.Rptr.3d 821, 129 P.3d 29] (*Hofsheier*).) Under the equal protection clause, we do not inquire whether persons are similarly situated for all purposes, *but whether they are similarly situated for purposes of the challenged law. (Hofsheier*, at pp. 1200–1201, italics added.) If the first prerequisite is satisfied, we proceed to judicial scrutiny of the classification. Where, as here, the statutory distinction at issue neither touches upon fundamental interests nor is based on gender, there is no equal protection violation if the challenged classification bears a rational relationship to a legitimate state purpose. (*Id.* at p. 1201; *Cruz, supra*, 207 Cal.App.4th at pp. 677–679.) Under the rational relationship test, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. (*Hofsheier, supra*, 37 Cal.4th at p. 1202.)

Here, the two affected classes are as follows: (1) those defendants who are in jail on and/or after October 1, 2011, who committed an offense on or after October 1, 2011, and (2) those defendants who are in jail on and/or after October 1, 2011, who committed the same offense *before* October 1, 2011.

These two groups are similarly situated for purposes of the October 1, 2011, amendment to section 4019, which increased conduct credits from two days of conduct credit for every four days spent in local presentence custody to two days of conduct credit for every two days spent in local presentence custody. These two groups committed the same offenses and are serving time together in local presentence custody but the current version of section 4019 treats them differently by awarding them different conduct credits based entirely on the dates they committed their offenses. Nothing distinguishes the efforts of a prisoner who committed a crime after October 1, 2011, to earn conduct credits from the efforts of one who committed the same crime before that date. Both classifications of prisoners, pre- and post-October 1, 2011, offense defendants, are aware of the conduct credit provision and have an incentive to perform assigned work and comply with rules and regulations because both classifications have the opportunity to earn conduct credit, just at different rates. To argue that a defendant who committed an offense before October 1, 2011, but was in local custody on or after that date was not aware of the conduct credit provision and did not have an incentive to work and behave is unpersuasive. Both classes have an incentive to work and behave but a defendant who committed a crime before the effective date is rewarded

less. Thus, based on the facts before us, the current version of section 4019 creates a classification that affects two similarly situated groups in an unequal manner. (Contra, *People v. Kennedy* (2012) 209 Cal.App.4th 385, 396–397 [147 Cal.Rptr.3d 123] [relying on *Brown* to find two groups not similarly situated].)

The Attorney General relies on *Brown, supra,* 54 Cal.4th 314, to argue the classes of defendants are not similarly situated because they are not similarly encouraged to alter their behavior to earn credits. In *Brown,* the court addressed whether the amendment to section 4019 that became operative on January 25, 2010, should be given *retroactive* effect to permit prisoners who served time in local custody before that date to earn conduct credits at the increased rate. (*Brown, supra,* 54 Cal.4th at pp. 317–318.) In addressing the issue of whether defendant was similarly situated to those defendants who served time after the operative date, the court explained: "As we have already explained, the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown, supra,* 54 Cal.4th at pp. 328–329.)

*Brown* is inapposite on this point as it did not involve a situation where a defendant sought enhanced conduct credit for time served after the amendment's operative date. Instead, *Brown* concerned whether the amendment was retroactive, i.e., whether a defendant who served time before the operative date was entitled to enhanced conduct credits. Here, we are faced with the issue of whether the current version of section 4019 operates prospectively as to a defendant who committed an offense before the amendment's effective date. We read the language of *Brown, supra,* 54 Cal.4th at page 329, "[t]hat prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows" as limited to the facts in that case—that there is no incentive for defendants who served time before the amendment's effective date to work and behave. *Brown* is not instructive on the issue of whether there is an incentive for defendants who served time after the amendment's effective date to work and behave. Because we conclude the two groups in question are similarly situated for purposes of the October 1, 2011, amendment, we must determine whether the classification bears a rational relationship to a legitimate state purpose.

With respect to the judicial scrutiny of the classification, we must determine whether there is any reasonably conceivable state of facts that could provide a rational basis for the classification. It is undisputed the purpose of section 4019's conduct credits generally is to affect inmates' behavior by

providing them with incentives to work and behave. (*Brown, supra,* 54 Cal.4th at pp. 327–329.) But that was not the purpose of Assembly Bill No. 109, which was part of the Realignment Act. As explained above, the Legislature's stated purpose for the Realignment Act "is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending." (*Cruz, supra,* 207 Cal.App.4th at p. 679; see § 17.5.) Section 17.5, subdivision (a)(7), puts it succinctly: "The purpose of justice reinvestment is to manage and allocate criminal justice populations more *cost-effectively,* generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders account-able." (Italics added.)

Thus, we must determine whether the amendment to section 4019 awarding fewer conduct credits to those defendants who committed their offenses between September 28, 2010, and September 30, 2011, than those defendants who committed their offenses on or after October 1, 2011, bears a rational relationship to the Legislature's legitimate state purpose of reducing costs. We are mindful the rational relationship test is highly deferential. (*People v. Turnage* (2012) 55 Cal.4th 62, 77 [144 Cal.Rptr.3d 489, 281 P.3d 464] ["[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends' "].)

We conclude the classification in question does bear a rational relationship to cost savings. Preliminarily, we note the California Supreme Court has stated equal protection of the laws does not forbid statutes and statutory amendments to have a beginning and to discriminate between rights of an earlier and later time. (*People v. Floyd* (2003) 31 Cal.4th 179, 188 [1 Cal.Rptr.3d 885, 72 P.3d 820] (*Floyd*) ["[d]efendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense"].) Although *Floyd* concerned punish-ment, we discern no basis for concluding differently here.

More importantly, in choosing October 1, 2011, as the effective date of Assembly Bill No. 109, the Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after

the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. (*Floyd, supra,* 31 Cal.4th at p. 190 [Legislature's public purpose predominate consideration].) Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011.

Finally, *In re Kapperman* (1974) 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657], is of no help to Rajanayagam as that case involved actual credits and not conduct credits. Conduct credits must be earned by a defendant, whereas custody credits are constitutionally required and awarded automatically on the basis of time served. (*Brown, supra,* 54 Cal.4th at p. 330.) We conclude Rajanayagam's equal protection rights were not violated.

## DISPOSITION

The judgment is affirmed.

Moore, J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 2013, S207285.