Filed 7/12/13  P. v. Thomas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056203 |
| v. | (Super.Ct.No. RIF1101096) |
| ANTHONY THOMAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Richard A. Erwood, Judge.  Affirmed.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia, Kristine A. Gutierrez and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Anthony Thomas, guilty of (1) carrying a concealed dirk or dagger (former Pen. Code, § 12020, subd. (a)(4) [eff. Jan. 2009]);[1] (2) possessing a device or paraphernalia for injecting or smoking a controlled substance (former Health & Saf. Code, § 11364, subd. (a) [eff. Jan. 2005]); and (3) willfully resisting, delaying, or obstructing a peace officer (former Pen. Code, § 148, subd. (a)(1) [eff. Jan. 2000]).  The trial court found true the allegations that defendant suffered (1) a prior strike conviction (former Pen. Code, §§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)); and (2) a prior conviction for which he served a prison term (former Pen. Code, § 667.5, subd. (b)).  The trial court sentenced defendant to prison for a term of five years.

Defendant contends (1) substantial evidence does not support his conviction for carrying a concealed dirk or dagger because the weapon was not capable of being readily used; and (2) the trial court miscalculated defendant's conduct credits (§ 4019).  We affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

A Riverside police officer placed defendant in handcuffs.  The officer then searched defendant.  Defendant was wearing a jacket.  The officer "could feel in the bottom of [defendant's] jacket something stiff and rigid inside."  The officer noticed the tip of a blade "sticking out the back of [defendant's] jacket."  The officer found a knife "in the back lining of [defendant's] jacket."  The officer described the knife as "kind of

---

[1] All further statutory references are to the Penal Code unless indicated.

like a kitchen knife, like a steak knife, about four-and-a-half-inch-long blade, two-and-a-half-inch-long black handle."

In order to retrieve the knife from the jacket, the officer "had to actually push the knife through [defendant's] jacket." The officer pushed the knife through the lining and pulled it out. The officer continued searching defendant.

## DISCUSSION

### A.     SUBSTANTIAL EVIDENCE

Defendant contends substantial evidence does not support his conviction for carrying a concealed dirk or dagger because the weapon was not capable of being readily used. We disagree.

"When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.) "We ""'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" [Citations.]' [Citation.]" (*Id.* at p. 943.)

Former section 12020, subdivision (a) made it a crime to carry a concealed dirk or dagger. "Dirk or dagger" was defined as "a knife or other instrument without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. A nonlocking folding knife, a folding knife that is not prohibited

3

by Section 653k, or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position." (§ 12020, subd. (c)(24).)

The requirement of "ready capability[] means to exclude certain devices from" the definition of "dirk or dagger." For example, "capable of ready use" excludes a weapon "that requires assembly before it can be utilized as a weapon." (*People v. Sisneros* (1997) 57 Cal.App.4th 1454, 1457.) Thus, "capable of ready use" refers to the type of weapon—not the location of the weapon.

The officer described the knife as "kind of like a kitchen knife, like a steak knife, about four-and-a-half-inch-long blade, two-and-a-half-inch-long black handle." Given that the knife was "like a kitchen knife," it can be inferred that it had a fixed blade. The evidence supports a conclusion that the knife could readily be used as a stabbing weapon that would cause great bodily injury, due to the depth of the potential stab wounds, i.e., four and one-half inches. Accordingly, we conclude substantial evidence supports the finding that defendant's knife was "capable of ready use."

Defendant asserts substantial evidence does not support the "capable of ready use" finding because the knife was located in the lining of his jacket. For the sake of analyzing defendant's argument, we will accept defendant's premise that the phrase "capable of ready use" can refer to the location of the weapon. Defendant's argument concerning the location of the knife is not persuasive because the tip of the knife blade was exposed, which means defendant would only have needed to push down the fabric around the knife blade to have the entire four and one-half inch blade exposed and ready

4

to use. The jury could reasonably infer that the act of pushing out the rest of the blade would take less than a minute, given that defendant would only need to remove the jacket and push down the fabric around the blade. Moreover, it did not appear from the officer's testimony that he struggled with removing the knife from the jacket. The officer testified that the tip of the blade was "sticking out the back" of the jacket, so the officer "pushed it out through the jacket and pulled it out," and then returned to searching defendant. The apparent ease with which the knife was removed from the jacket is further evidence supporting the inference that the knife was "capable of ready use."

Defendant focuses on the officer's testimony that there was no hole in the jacket other than the one the officer made when removing the knife. Specifically, the officer was asked, "Was there a previous hole in the lining before you created one?" The officer responded, "I did not see one." Defendant asserts this evidence shows defendant did not have "quick access" to the knife. Defendant's argument is not persuasive because he is not looking at the evidence in the light most favorable to the judgment. The officer also testified that the tip of the knife blade was "sticking out the back of [defendant's] jacket." The logical inference is that there was a hole in the lining of the jacket through which the tip of the blade was protruding, prior to the officer removing the knife. When looking at the contradictory evidence in the light most favorable to the judgment, there is substantial evidence supporting the jury's verdict because the knife was readily accessible.

### B.    PRESENTENCE CREDITS

#### 1.    *PROCEDURAL HISTORY*

Defendant was arrested on May 19, 2011.  Defendant remained in custody and was sentenced on April 13, 2012.  Defendant's actual time in custody was 331 days.  At the sentencing hearing, defendant was granted 164 days of section 4019 credit.

#### 2.    *ANALYSIS*

##### a)    Contention

Defendant contends the trial court miscalculated his conduct credits because it should have calculated defendant's credits at two different rates:  one formula for the days defendant spent in jail prior to October 1, 2011, and a second formula for the days defendant spent in jail on and after October 1, 2011.  Defendant asserts he should have been given 262 days of conduct credit.

##### b)    Statutory Language

In the prior version of section 4019, "the Legislature did not expressly declare whether the January 25, 2010, amendment was to apply retroactively or prospectively. [Citation.]  Here, [in the current version,] the Legislature did expressly state the current version of section 4019 is to apply prospectively only to defendants who commit their offenses on or after October 1, 2011." (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52, fn. 4 (*Rajanayagam*).)  Consistent with that plain expression, we interpret the most recent version of section 4019 as applying only to defendants who committed their offenses on or after October 1, 2011.  The statute does not contain a provision granting trial courts authority to apply a bifurcated or two-tier credit system.  The current version

6

of the statute is only applicable to inmates who commit crimes on or after October 1, 2011. Thus, we conclude the trial court correctly calculated defendant's section 4019 credits per a single accrual system, rather than a bifurcated system.

### c) Statutory Ambiguity

Defendant asserts there is ambiguity in the language of the current version of section 4019 that must be construed in his favor. For example, defendant highlights section 4019, subdivision (h), which reflects: "The changes to this section . . . shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." Defendant asserts this second sentence is problematic because if the current version of section 4019 only applies to people who committed crimes on or after October 1, 2011, then it is superfluous to include language concerning credits earned prior to October 1, 2011. Thus, defendant reasons this seemingly conflicting language must be construed in his favor and interpreted as creating a two-tiered or bifurcated system of credits.

When a penal statute "is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt th[e] interpretation more favorable to the defendant." (*People v. Avery* (2002) 27 Cal.4th 49, 57.) We do not find defendant's argument to be persuasive because we do not find an ambiguity in the statutory language. The first sentence in subdivision (h) plainly sets forth the rule that the current version of the statute applies only to people to who committed crimes on or after October 1, 2011. In that context, the second sentence is not ambiguous. The second

7

sentence reinforces the idea that people whose crimes were committed prior to October 1, 2011, are subject to earning credits at the rate set forth by the prior law. The second sentence also clarifies how to address the credit situation for people who commit crimes while in jail, e.g. those who have earned credits, but have also committed a crime on or after October 1, 2011. In sum, we do not find an ambiguity in the statutory language.

### d) Equal Protection

Defendant contends equal protection requires his conduct credits be calculated at the same rate as inmates who committed crimes on or after October 1, 2011, because there can be no justification for awarding inmates conduct credits at different rates based on the dates they committed their crimes. We disagree.

Where a statute at issue distinguishes between classes of people but "neither touches upon fundamental interests nor is based on gender, there is no equal protection violation if the challenged classification bears a rational relationship to a legitimate state purpose. [Citations.]" (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 53.) The interest at issue in section 4019 is conduct credits or incentives to perform assigned work and comply with rules and regulations. (*Id.* at pp. 54-55.) This is not a fundamental interest, and therefore, the issue is whether the separate treatment of the classes bears a rational relationship to a legitimate state interest. (*Id.* at pp. 53-54.)

The separate classifications at issue in section 4019 bear a rational relationship to the state interest in cost savings. (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 55.) In other words, section 4019 is rationally related to the objective of reducing prison

spending, which was a primary purpose of the Realignment Act. (*Id.* at p. 49.) Thus, we conclude defendant's equal protection rights were not violated.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.