Filed 9/13/13  P. v. Perez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARTIN ARMANDO PEREZ,<br><br>Defendant and Appellant. | F065063<br><br>(Super. Ct. No. SF016440A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Cornell, Acting P.J., Detjen, J. and Franson, J.

## INTRODUCTION

Appellant Martin Armando Perez was convicted after jury trial of first degree burglary and sentenced to four years' imprisonment. (Pen. Code, § 460, subd. (a).)[1] Appellant challenges the sufficiency of the evidence supporting the guilty verdict and argues that he is entitled to additional custody credits. Neither contention is persuasive. The judgment will be affirmed.

## FACTS

During the evening of January 16, 2010, Hilario Tellez, Sr. and his wife, Beatrice Chavez, ran some errands. While they were away, their house was burglarized and a flat screen television and a computer were stolen. The burglar or burglars entered the house by forcing open a bedroom window. Chavez and Tellez found two cigarette butts lying on the garage floor next to Tellez's truck.

In August 2011, police took a buccal swab from appellant. His DNA profile matched DNA that was found on one of the cigarette butts.[2] Chavez and Tellez do not know appellant and never invited him into their home.

Appellant told a police officer that he smoked. He denied committing the burglary, saying "I'll be honest. I steal cars. I didn't do that, though."

Appellant's younger brother, Juan Carlos Perez, testified that "at some point, approximately two years ago, thereabouts" appellant drove him to the house that was burglarized. Appellant stopped the car in front of the driveway. Juan knocked on the front door, which was opened by the residents' son. Appellant did not pull his car into the driveway or get out of the car. Juan did not recall if the garage door was open or closed. Juan testified that appellant is a heavy smoker who typically flicks his cigarette

---

[1]     Unless otherwise specified all statutory references are to the Penal Code.

[2]     The other cigarette butt was not analyzed.

2.

butts out the car window. Juan did not see appellant flick any cigarette butts out of the car window while the car was stopped in front of the driveway.

The burglarized house is located in Shafter, California. The wind speeds in Shafter on January 16, 2010, were between 3.57 and 9.90 miles per hour.

## DISCUSSION

### I. The Conviction Is Supported By Substantial Evidence.

Appellant challenges the sufficiency of the evidence supporting the burglary conviction. His arguments are not convincing. As will be explained, the guilty verdict is supported by the required modicum of evidence.

"When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 942-943 (*Clark*).) "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).) "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the [disputed] finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) "'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no

3.

hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*Zamudio, supra*, 43 Cal.4th at p. 357.)

"The same standard governs in cases where the prosecution relies primarily on circumstantial evidence. [Citation.]" (*Zamudio, supra*, 43 Cal.4th at p. 357.) "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.]" (*Clark, supra,* 52 Cal.4th at p. 943.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.]" (*Zamudio, supra*, at p. 357.) When the circumstances reasonably justify the trier of fact's findings, the appellate court's conclusion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. (*Id.* at p. 358.)

Appellant argues "[t]he prosecution failed to present evidence sufficient for the jury to reasonably infer that [he] dropped the cigarette butt in the garage at the time of the burglary and not in or near the garage at an earlier time." We disagree. Chavez and Tellez testified that they searched the garage after they realized their home had been burglarized and found two cigarette butts lying on the floor. Chavez testified that the cigarette butts were not on the garage floor when she and Tellez left to run errands prior to the burglary. Tellez and Chavez testified that no one who lives in the home smokes and they do not know appellant and never gave him permission to be in their home. Appellant's DNA profile matched DNA found on one of the cigarette butts. Juan testified that appellant is a heavy smoker. From this testimony a jury could reasonably infer that appellant dropped the cigarette butts on the garage floor during the burglary.

Appellant contends that he could not have entered the garage because the interior door between the kitchen and garage was locked when Chavez and Tellez returned home from their errands. This argument fails because there was no evidence that this interior door did not have the common type of locking mechanism that allows one to lock and unlock it from one side of the door without a key. There was no testimony that a key was

4.

required to lock and unlock this door. The jury could have found that appellant entered the house through the bedroom window, unlocked the interior door between the kitchen and garage, walked through this door into the garage and then returned into the house through this door.

Finally, appellant argues there was testimony legitimately placing him at the location of the burglarized house and, therefore, his DNA at the crime scene is insufficient to support the verdict. We are not convinced. Chavez testified that the cigarette butts were not on the garage floor when she and Tellez left to run errands and were lying on the floor when they returned home. Therefore, appellant's act of dropping his brother off in front of the house is relevant only if it occurred while Chavez and Tellez were running errands on the evening of the burglary. Appellant did not produce such evidence. Juan testified that appellant dropped him off in front of the burglarized house "at some point, approximately two years ago, thereabouts." There was no evidence that this event occurred on the same evening as the burglary.

Several cases are analogous to this situation. In *People v. Tuggle* (2012) 203 Cal.App.4th 1071, 1075-1077, a burglary conviction was upheld where the defendant's fingerprints were found on a vase in a burglarized home and the defendant said that he had not been in the home for the previous two years. In *People v. Preciado* (1991) 233 Cal.App.3d 1244, 1246-1247, a claim of insufficiency of the evidence was rejected where the defendant's fingerprints were found on a wristwatch box inside a burglarized condominium and the victim did not know the defendant. In *People v. Ramirez* (1931) 113 Cal.App. 204, 205-207, the defendant's fingerprint on a suitcase that was found inside a burglarized store was sufficient to uphold a burglary conviction.

For all of these reasons, we hold that the record contains adequate evidence from which a jury could find beyond a reasonable doubt that appellant left a cigarette containing his DNA on the floor of the garage during the commission of the burglary and

5.

not at some other prior time.  Since the guilty verdict is supported by substantial evidence, it did not infringe appellant's federal constitutional due process rights.

## II.    Appellant's Custody Credit Award Did Not Violate His Equal Protection Guarantee.

Under section 2900.5, a person sentenced to state prison for criminal conduct is entitled to presentence custody credits for all days spent in custody before sentencing. (§ 2900.5, subd. (a).)  In addition, section 4019 provides for what are commonly called conduct credits.  Section 4019 has undergone numerous amendments in the past few years.  Under the version in effect prior to January 25, 2010, six days would be deemed to have been served for every four days spent in actual custody.  (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, pp. 4553-4554.)  Section 4019 was amended during 2011 to increase this ratio to one-for-one credits.  (§ 4019, subds. (b), (c), as amended by Stats. 2011, ch. 15, § 482.)   The legislation expressly provided that this change "shall apply prospectively ... for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."  (§ 4019, subd. (h), as added by Stats. 2011, ch. 15, § 482 and amended by Stats. 2011, ch. 39, § 53.)

Appellant was awarded a total of 285 custody credits, which were calculated at the "two for four" rate.  He argues that the federal constitutional equal protection guarantee entitles him to a one-for-one credit award.  We are not persuaded.

*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, held that the amendment to section 4019 awarding less conduct credits to those defendants who committed their offenses between September 28, 2010 and September 30, 2011, than those defendants who committed their offenses on or after October 1, 2011, bears a rational relationship to the Legislature's legitimate state purpose of reducing costs.  The *Rajanayagam* court explained that in choosing October 1, 2011, as the effective date of the amended statute, "the Legislature took a measured approach and balanced the goal of cost savings against

public safety." (*Rajanayagam, supra,* at p. 55.) It continued, "Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Id.* at p. 56.)

There is a second rational basis for the classification at issue. In *People v. Kennedy* (2012) 209 Cal.App.4th 385, the appellate court determined that the Legislature rationally could have believed that by making the application of the amendments to section 4019 dependent on the date of the crime, the deterrent effect of the criminal law as to crimes committed before that date was being preserved. (*Id.* at pp. 398-399.) The *Kennedy* court explained: "To reward appellant with the enhanced credits of the [October] 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes. We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*Id.* at p. 399.)

We find *Rajanayagam* and *Kennedy* to be well-reasoned and persuasive. Following and applying these decisions, we reject appellant's equal protection challenge.

## DISPOSITION

The judgment is affirmed.

7.