Filed 2/20/14  P. v. Quintana CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JIMMY ZAPATA QUINTANA,<br><br>    Defendant and Appellant. | F064486<br><br>(Super. Ct. No. F10900047)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Jimmy Zapata Quintana was sentenced to four years eight months in prison after being convicted of three crimes as a result of beating his wife.[1]  The sentence was stayed and Quintana was placed on probation.  Approximately one year after the sentencing hearing, the probation department filed a petition alleging Quintana violated the terms and conditions of his probation.  After a contested hearing, the trial court agreed, terminated Quintana's probation, and ordered him to complete his sentence in prison.  This appeal is from that order.

Quintana claims two errors occurred, which we must remedy.  First, he presents two theories to support his argument that the trial court erred when it imposed the four-year eight-month sentence.  We conclude we do not have jurisdiction to consider these arguments because Quintana did not appeal in a timely manner from the judgment that imposed the sentence.

Second, Quintana contends his right to equal protection of the laws was violated because he was not given custody credits for the time spent in jail at the rate provided for in Penal Code section 4019[2] at the time he was sent to prison, but instead was awarded custody credits at the lower rate provided for in section 4019 at the time his crime was committed.  When section 4019 was amended, the Legislature included a provision limiting application of the increased credits to those defendants who had committed crimes on or after the effective date of the amendment.  We conclude, as have the other courts that have considered the issue, that this distinction does not violate the Fourteenth Amendment.  Accordingly, we will affirm the judgment.

---

[1]Quintana and the victim were married on August 21, 2010; the beating was inflicted in 2009.  We will refer to the victim as "wife" or "victim" to ease the reader's task.

[2]All statutory references are to the Penal Code unless otherwise stated.

## FACTUAL AND PROCEDURAL SUMMARY

A detailed recitation of the facts leading to the charges against Quintana is unnecessary to resolve this appeal. It is sufficient to note the information charged Quintana with inflicting corporal injury to a spouse (§ 273.5, subd. (a)), battery causing serious bodily injury (§ 243, subd. (d)), and making criminal threats (§ 422). The charges resulted from a beating inflicted by Quintana on his wife when she informed him she wanted to terminate their relationship. A jury found Quintana guilty of inflicting corporal injury on a spouse, not guilty of battery causing serious bodily injury but guilty of the lesser included offense of battery, and guilty of making a criminal threat.

On January 11, 2011, Quintana was sentenced to four years for infliction of corporal injury and eight months for making criminal threats, for a total prison term of four years eight months. He was sentenced to time served on the battery count. The sentence was stayed and Quintana was placed on probation for five years, the terms of which included 365 days in jail, enrollment in a batterer's treatment program, and an order prohibiting any contact between Quintana and the victim. The trial court also informed Quintana that he had the right to appeal the judgment and orders of the court, and informed him that if he chose to appeal, any notice of appeal must be filed within 60 days.

On February 24, 2012, Quintana was found to be in violation of his probation for missing a court hearing and having contact with the victim. The trial court lifted the stay on the prison sentence, revoked probation, and ordered Quintana to serve four years eight months in prison.

## DISCUSSION

### I. Section 654 and the Merger Doctrine

Quintana first argues the trial court erred when it imposed sentence on the infliction of corporal injury on a spouse and the battery counts. He asserts that battery is a lesser included offense of infliction of corporal injury on a spouse and therefore the two

3.

counts merged.  In the alternative, he contends section 654 required any sentence on the battery count be stayed.

The People point out the time to appeal this error, if any error occurred, was in an appeal from the original judgment, not from the violation of probation order.  To support their argument, the People cite California Rules of Court, rule 8.308, which requires a notice of appeal to be filed within 60 days after rendition of judgment, and Penal Code section 1237, subdivision (a), which provides that a defendant may take an appeal from a final judgment of conviction, and also provides that an order granting probation is deemed to be a final judgment.

The People also cite *People v. Mendez* (1999) 19 Cal.4th 1084, 1094 (*Mendez*), which holds that the failure to file a timely notice of appeal divests the appellate court of jurisdiction:  "A timely notice of appeal, as a general matter, is 'essential to appellate jurisdiction.'  [Citation.]  It largely divests the superior court of jurisdiction and vests it in the Court of Appeal.  [Citation.]  An untimely notice of appeal is 'wholly ineffectual: The delay cannot be waived, it cannot be cured by a nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion.'  [Citation.]  The purpose of the requirement of a timely notice of appeal is, self-evidently, to further the finality of judgments by causing the defendant to take an appeal expeditiously or not at all."

Quintana did not address this issue in his opening brief.  In his reply brief he argues the sentence can be challenged at any time, regardless of the failure to file a timely notice of appeal because the trial court was without jurisdiction to impose the sentence it did.

Quintana's argument reflects a misunderstanding of the term "jurisdiction."   He relies on *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653 (*American Contractors*) to support his argument, yet the explanation of jurisdiction given in the case clearly explains why he is wrong.

4.

"The term 'jurisdiction,' 'used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition.' [Citation.] Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' [Citation.]

"However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] '"[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction."' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' [Citations.]" (*American Contractors, supra,* 33 Cal.4th at pp. 660-661.)

For this argument to prevail, Quintana would have to establish the trial court acted without "jurisdiction in its most fundamental or strict sense," which means the trial court must not have had jurisdiction over the parties or the subject matter. (*American Contractors, supra,* 33 Cal.4th at p. 660.) This is where the argument fails because the trial court had jurisdiction over both Quintana, who appeared at trial, and the subject matter of the action, a serious felony committed by Quintana in Fresno County. Thus, the judgment was not void. If there is merit to Quintana's argument, an issue we do not address, it was subject to an attack on a timely appeal. (*Id.* at p. 661.) Quintana's failure

5.

to pursue a timely appeal divests this court of jurisdiction, requiring us to dismiss the appeal on this issue.  (*Mendez, supra,* 19 Cal.4th at p. 1094.)

## II.     Equal Protection and Conduct Credits

### *Factual Summary*

Quintana attacked the victim on December 20, 2009.  He quickly posted bail and remained out of custody until the jury returned with a verdict on September 8, 2010.  He remained in custody until he was sentenced on January 11, 2011, at which time he was credited with 128 days in custody.

On January 9, 2012, Quintana failed to appear at a hearing, and a bench warrant was issued for his arrest.  He was placed in custody shortly thereafter where he remained until February 24, 2012, at which time the trial court held the violation of probation hearing and sentencing.  His time in custody was calculated to be 171 days by the probation department.

### *Amendments to section 4019*

Section 4019 allows individuals in local custody to earn additional credit for time served if they have good behavior and if they are willing to perform work at the direction of the jail staff.  The effect of these credits, which we will refer to as custody credits, is to reduce the amount of time a defendant convicted of a crime is incarcerated.

At the time Quintana attacked his victim (December 20, 2009), section 4019 provided that a defendant in jail would earn custody credits at the rate of two days for every four days of actual time in custody.  (Stats. 1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f)].)  Effective January 25, 2010, a special session of the Legislature amended section 4019 to aid the state in addressing a fiscal crisis (special session amendment).  This amendment increased the amount of custody credits earned by most defendants, but did not apply to various categories of defendants, including defendants convicted of a serious felony as defined by section 1192.7.  (Stats. 2009 3d Ex. Sess. 2009-2010, ch. 28, §§ 50, 62 [former § 4019, subds. (b), (c) & (f)].)  Since Quintana was

convicted of a serious felony, this amendment did not change the number of custody credits he earned.

Effective September 28, 2010, section 4019 was amended (2010 amendment) to restore custody credits to the same level they were before the special session amendment. (Stats. 2010, ch. 426, § 2.) This amendment added subdivision (g) to section 4019, which provided that the change in custody credits applied only to those defendants incarcerated for crimes committed on or after the effective date of the amendment.

The next amendment was the change that forms the basis for Quintana's argument. Operative October 1, 2011, section 4019 was amended to provide custody credits at the rate of two days credit for every two days served in custody (2011 amendment). (Stats. 2011, ch. 15, § 482.) This amendment retained subdivision (g) so that the changes applied only to defendants who committed crimes on or after October 1, 2011.

### *Quintana's Argument*

When Quintana was convicted, section 4019 subdivisions (b) and (c) differentiated between defendants convicted of certain felonies. Because Quintana was convicted of a serious felony (§ 422), he earned two days custody credit for every four days in custody. (Stats. 2009 3d Ex. Sess. 2009-2010, ch. 28, § 50 [former § 4019, subds. (b)(2), (c)(2) & (f).) He was incarcerated under this formula until he was released to the in-patient treatment program.[3]

The 2011 amendment was effective when Quintana was incarcerated for violating probation. Because Quintana committed his crimes in 2009, however, he continued to earn custody credit at the less favorable rate of two days for every four days spent in

---

[3]Quintana earned credit for the time he spent in the in-patient treatment program. (§ 2900.5.) Section 4019 does not apply to such programs, however, so no additional custody credit was earned.

custody.  This disparity, according to Quintana, violates his right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

### *Analysis*

We conclude there is no equal protection violation.

*People v. Rajanayagam* (2012) 211 Cal.App.4th 42 held that granting the enhanced credits of the 2011 amendment to section 4019 only to those defendants who committed their offenses on or after October 1, 2011, bears a rational relationship to the Legislature's legitimate state purpose of reducing costs.  The *Rajanayagam* court explained that in choosing October 1, 2011, as the effective date of the amended statute, "the Legislature took a measured approach and balanced the goal of cost savings against public safety." (*Id.* at p. 55.)  It continued, "Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Id.* at p. 56.)

There is a second rational basis for the classification at issue.  In *People v. Kennedy* (2012) 209 Cal.App.4th. 385, the appellate court determined the Legislature rationally could have believed that by making the application of the amendments to section 4019 dependent on the date of the crime, the deterrent effect of the criminal law as to the crimes committed before that date was being preserved. (*Kennedy,* at pp. 398-399.)  The *Kennedy* court explained:  "To reward appellant with the enhanced credits of the [October] 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes.  We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and

given the rewards (conduct credits) in effect at the time an offense was committed."  (*Id.* at p. 399.)

## DISPOSITION

The judgment is affirmed.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
FRANSON, J.