Filed 7/24/13  P. v. Thornton CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056701 |
| v. | (Super.Ct.No. SWF1101168) |
| SHAUN LAYJEWEL THORNTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.

Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for

Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, James D. Dutton, and Michael T.

Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Shaun Layjewel Thorton is serving a second-strike sentence of five

years in prison after a jury convicted him of four counts related to using and possessing

1

heroin and possessing a switchblade knife. In this appeal, defendant argues: 1) the trial court abused its discretion when it declined to dismiss his prior strike conviction; and 2) he is entitled to the one-for-one pre-sentence custody credits for his time in custody after October 1, 2011, even though his current crimes occurred before that date. As discussed below, we reject both arguments and affirm the conviction.

FACTS AND PROCEDURE

On the evening of November 22, 2010, Murrieta police officers responded to the parking lot of a condominium complex where it was reported that a person in a parked vehicle was acting strangely. Officers found defendant in the driver seat of a pickup truck and a female in the passenger seat. Defendant appeared to be under the influence. Defendant gave consent to search the truck and his person. The search revealed an empty syringe in defendant's pocket and a syringe containing a brown liquid behind the driver seat. The keychain in the truck had attached to it a small metal container which was found to contain 0.08 grams of a substance containing heroin. The officers found on defendant's person a "butterfly" knife, which opens with a flip of the wrist. Defendant tested positive for methamphetamine, opiates and marijuana.

On May 9, 2012, a jury convicted defendant of four counts: heroin possession (Health & Saf. Code, § 11350), possessing a switchblade knife (Pen. Code, § 653, subd. (k)),[1] being under the influence of a controlled substance (Health & Saf. Code, § 11550), and possessing a syringe (Bus. & Prof. Code, § 4140). The jury acquitted defendant of

---

[1] All section references are to the Penal Code unless otherwise indicated.

possessing narcotic paraphernalia (Health & Saf. Code, § 11364).  Defendant admitted

that he had a prior strike conviction (§§ 667, subd. (c) & (e)(1), 1170.12, subd. (c)(1))

and a prison prior (§ 667.5, subd. (b)).

Prior to trial, defendant filed a motion asking the trial court to exercise its

discretion under section 1385 to dismiss the strike prior in the interest of justice.[2]  The

trial court heard the matter and denied the motion.  Defendant filed another such motion.

The People filed their opposition.  After trial, each party filed supplemental papers.  The

court again heard the matter as part of the sentencing hearing on July 13, 2012.  After

hearing argument from both parties, the court again denied the motion.

The trial court sentenced defendant to five years as follows: the midterm of two

years for possessing heroin, doubled to four years for the strike prior, plus one year for

the prison prior.  The terms for the other counts were to run concurrent.  The court gave

defendant credit for 224 days of actual custody and 112 days of good conduct credit

---

[2] The motion set forth defendant's criminal history, as supplemented by the People's later sentencing memorandum and the probation report:
   2001 - syringe possession – diversion program granted/terminated 15 days jail
   2001 - under the influence – diversion program granted/terminated 3 years probation
   2001 - drug possession, drug paraphernalia, under the influence - 3 years probation
   2002 - under the influence - 3 years probation
   2003 - drug possession – 3 years probation
   2003 - robbery, petty theft – 3 years probation (First Strike – took a bicycle from a 12-year-old boy)
   2003 - drug possession – 3 years state prison
   2003 - drug possession (in prison)
   2008 - drug use - 3 years probation, six months custody
   2009 - spousal abuse – 3 years probation, 6 months jail
   In addition, defendant was on probation when he committed the current crimes and had violated parole three times.

under section 4019 for a total of 336 days of credit. Credits were later corrected to 259 actual days and 128 conduct days for a total of 387 days of credit, to reflect that defendant's sentencing hearing had been postponed from June 8, 2012. This appeal followed.

## DISCUSSION

1. *The Trial Court Did Not Abuse Its Discretion Under Three Strikes*

Defendant argues the trial court abused its discretion when it declined to dismiss his prior strike conviction. Specifically, defendant contends because his crimes stem from his untreated drug addiction, he should be allowed to seek treatment rather than spend five years in prison. As discussed below, we find the trial court correctly exercised its discretion.

The "Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 528.) The trial court's discretion to strike a qualifying strike is therefore guided by "established stringent standards" designed to preserve the legislative intent behind the Three Strikes law. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).) "[T]he court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

4

A court's refusal to dismiss a prior strike conviction is reviewed for an abuse of discretion. (*Carmony, supra,* 33 Cal.4th at p. 374.) The court will abuse its discretion only if its refusal to dismiss the prior strike "is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) However, a reviewing court will find an abuse of discretion when the factual findings critical to the trial court's decision have no support in the evidence. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) The defendant has the burden of demonstrating that the court's decision was irrational or arbitrary. (*Carmony, supra*, 33 Cal.4th at p. 376.) This is a very difficult standard for a defendant to overcome generally; more so in view of this defendant's extensive criminal record and lack of prospects for improvement.

Here, the trial court stated that it was denying defendant's motion to dismiss the strike prior because defendant: 1) was on probation when he committed the current crimes; 2) had violated parole three times; 3) continued taking drugs and breaking the law numerous times; and 4) had failed a diversion program twice. Further, the trial court concluded that, based on defendant's criminal history, his prospects for maintaining a crime-free lifestyle in the future, and the current charges (for which he could be sentenced to three years even without considering his priors), the court found that defendant falls "right smack in the middle of" the scheme of the three strikes law, regardless of defendant's drug problem. Based on our review of each of the factors that the trial court cited in support of its decision, especially with regard to his extensive criminal history as summarized in footnote two of this opinion, and his prospects for

5

rehabilitation considering his long-term drug addiction, we cannot conclude that trial court's decision is so irrational or arbitrary that no reasonable person could agree with it.

2. *Pre-Sentence Conduct Credits*

Defendant also argues he should have received one-for-one conduct credits for the time he spent in jail awaiting trial after these increased credits became effective for crimes committed on or after October 1, 2011. Defendant spent three days in jail after being arrested in 2010. He then spent 256 days in jail between November 1, 2011 and his sentencing on July 13, 2012. As discussed below, we reject defendant's contention based on clear precedent.

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities, including partial days. (§ 2900.5, subd. (a); *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) Section 4019 provides that a criminal defendant may earn additional presentence credit against his or her sentence for performing assigned labor (§ 4019, subd. (b)), and for complying with applicable rules and regulations of the local facility (§ 4019, subd. (c)). These presentence credits are collectively referred to as conduct credits. (*People v. Dieck* (2009) 46 Cal.4th 934, 939.)

Section 4019 has been amended multiple times. Before January 25, 2010, defendants were entitled to one-for-two conduct credits, which is two days for every four days of actual time served in presentence custody. (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, pp. 4553, 4554.) Effective January 25, 2010, the Legislature amended section 4019 to provide that prisoners, with some exceptions, earned one-for-one conduct credits, which is two days of conduct credit for every two

days in custody. (Stats. 2009, 3d Ex. Sess. 2009-2010, ch. 28, § 50.) Effective September 28, 2010, the Legislature again amended section 4019. (Stats. 2010, ch. 426, §§ 1, 2, 5.) Subdivisions (b) and (g) restored the one-for-two presentence conduct credit calculation that had been in effect prior to the January 25, 2010, amendment.

Most recently, the Legislature amended section 4019 to provide for up to two days credit for each four-day period of confinement in local custody. (§ 4019, subds. (b) & (c).) This scheme reflects the Legislature's intent that if all days are earned under section 4019, a term of four days will be deemed to have been served for every two days spent in actual custody. (§ 4019, subd. (f).) This version of section 4019 became operative on October 1, 2011 (Stats. 2011, ch. 39, § 53), and by its terms applies to "prisoners who are confined . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).) The second sentence of subdivision (h) can be read to contradict the first sentence. That is, the first sentence clearly states the new, more generous rule applies only to prisoners who committed their crime prior to October 1, 2011. The second sentence could be read to mean that any days earned on or after October 1, 2011, are earned at the new, more generous rate, seemingly regardless of when the prisoner committed their crime. Defendant urges we resolve this ambiguity in favor of granting the more generous calculation for all time served on or after October 1, 2011.

The function of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)

If the language of the statute is ambiguous, a court will turn to the rules of statutory construction or to extrinsic sources to ascertain the Legislature's intent. (*Id.* at p. 664.) Here, we agree that subdivision (h) is ambiguous. However, we disagree with defendant's proposed construction.

The first sentence of subdivision (h) unambiguously states that the new calculation of conduct credits applies only to prisoners confined for an offense committed on or after October 1, 2011. The second sentence, "Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law," could arguably be interpreted to mean that while the credits earned before October 1, 2011 are calculated at the prior rate, credits earned on or after October 1, 2011 are to be calculated at the new rate, regardless of when the offense was committed. That interpretation, however, is untenable because it renders the first sentence meaningless.

""'"It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.' [Citation.]" (*Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269 (*Rodriguez*).) Accordingly, we cannot read the second sentence to imply that any credits earned by a defendant on or after October 1, 2011, shall be calculated at the enhanced conduct credit rate, even if the offense for which he or she is confined was committed before October 1, 2011, because that would render the first sentence superfluous.

8

Instead, we rely on another well-established rule of statutory construction to resolve the ambiguity. "'A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed.' [Citation.]" (*Rodriguez, supra,* 14 Cal.App.4th at p. 1268.) Subdivision (h)'s first sentence unambiguously reflects the Legislature's intent to apply the enhanced conduct credit provision only to those defendants who committed their crimes on or after October 1, 2011. Because the second sentence cannot be read to extend the enhanced conduct credit provision to any other group, namely those defendants in local custody who committed offenses before October 1, 2011, without vitiating the first sentence, we conclude that subdivision (h)'s second sentence is intended to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit, but only as calculated under the prior law. (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1553 (*Ellis*).) To interpret the second sentence otherwise ignores the Legislature's clear intent, as expressed in the first sentence of subdivision (h). Accordingly, defendant is not entitled to additional credit for the time he was confined in county jail on and after October 1, 2011.

Defendant contends that applying the current version of section 4019 to defendants whose offenses were committed after October 1, 2011, but not to those, such as defendant, who served presentence time in custody after October 1, 2011 for crimes committed before October 1, 2011, also violates equal protection principles.

9

However, California appellate courts have held that awarding conduct credits at different rates to defendants in presentence custody on or after October 1, 2011, based on whether they committed their offenses before that date or on or after that date, does not violate their equal protection rights. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 55 (*Rajanayagam*); *Ellis, supra,* 207 Cal.App.4th at pp. 1552-1553.) The *Rajanayagam* court reasoned in part: "[T]he Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. [Citation.] Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam, supra,* 211 Cal.App.4th at pp. 55-56.)

We agree with the *Rajanayagam* court that applying the current version of section 4019 only to defendants who committed offenses on or after October 1, 2011, "bear[s] a

rational relationship to cost savings." (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 55.) We therefore reject defendant's equal protection challenge to the prospective-only application of the most recent amendments to section 4019.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
                    P. J.

We concur:

MILLER_____
              J.

CODRINGTON_____
                J.