Filed 9/27/13  P. v. Maese CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALEX MAESE,<br><br>    Defendant and Appellant. | F065970<br><br>(Super. Ct. No. BF142139A)<br><br>**O P I N I O N** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Wiseman, Acting P.J., Kane, J., and Detjen, J.

Pursuant to a plea agreement, appellant, Alex Maese, pleaded no contest to three counts of second degree burglary (Pen. Code, §§ 459, 460, subd. (b)[1]; counts 1, 3, 5) and admitted allegations that he had suffered two "strikes"[2] and that he had served three separate prison terms for prior felony convictions (§ 667.5, subd. (b)). Consistent with the plea agreement, the court struck appellant's strikes and imposed a prison term of six years, consisting of the three-year upper term on count 1 and one year on each of the three prior prison term enhancements. The court imposed concurrent three-year terms on each of counts 3 and 5. The court also awarded appellant 357 days of presentence custody credits, consisting of 239 days of actual time credits and 118 days of conduct credits.

On appeal, appellant's sole contention is that the court's failure to award presentence conduct credits under the one-for-one credit scheme of the current iteration of section 4019 violated appellant's constitutional right to the equal protection of the laws. We affirm.

## DISCUSSION

*Statutory Background*

Under section 2900.5, a person sentenced to state prison for criminal conduct is entitled to presentence custody credits for all days spent in custody before sentencing. (§ 2900.5, subd. (a).) In addition, section 4019 provides for what are commonly called conduct credits, i.e., credits against a prison sentence for willingness to perform assigned

---

[1] All statutory references are to the Penal Code.

[2] We use the term "strike" as a synonym for "prior felony conviction" within the meaning of the "three strikes" law (§§ 667, subds. (b)-(i); 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

2

labor (§ 4019, subd. (b)) and compliance with rules and regulations (§ 4019, subd. (c)). (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.)

In the past few years, section 4019 has undergone numerous amendments, of which the following concern us here. First, effective September 28, 2010, the Legislature amended section 4019 to provide, for defendants confined for crimes committed on or after that date, six days would be deemed to have been served for every four days spent in actual custody—a ratio of one day of conduct credit for every two days served (one-for-two credits). (Stats. 2010, ch. 426, § 2, p. 2088.) We refer to this version of section 4019 as former section 4019.

Next, a series of amendments in 2011, which began with Assembly Bill No. 109 (2011-2012 Reg. Sess.), enacted as part of the so-called criminal realignment legislation, culminated in the current version of section 4019, which provides that defendants can receive one-for-one credits, i.e., two days of conduct credit for every two days served in local custody.[3] (§ 4019, subds. (b), (c); see *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 49-50 (*Rajanayagam*).) The new legislation expressly provided that this change "shall apply prospectively and shall apply to prisoners who are confined to a county jail ... for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).) We sometimes refer to the current version of section 4019 as the October 1, 2011 amendment.

---

[3]     Under Section 2933.1, the effective date of which precedes former section 4019 as well as the current version of the section 4019, "[n]otwithstanding any other law," persons convicted of a felony classified as "violent" under section 667.5, subdivision (c) may earn credit against their term of no more than 15 percent. (§ 2933.1, subd. (a); *In re Pope* (2010) 50 Cal.4th 777, 779.) As the parties do not dispute, second degree burglary is not a section 667.5, subdivision (c) violent felony, and therefore the section 2933.1 15 percent limitation is not implicated here.

*Appellant's Presence Confinement and the Trial Court's Credits Calculation*

Appellant committed the count 1 offense on July 31, 2011, prior to the effective date of the October 1, 2011 amendment. However, his entire period of presentence custody—from January 3, 2012, to the date of sentencing, August 28, 2012—postdated October 1, 2011. He committed the count 2 and 3 offenses on, respectively, October 7, 2011, and October 8, 2011.

*Contentions and Analysis*

Appellant argues that for persons who, like him, served time in local custody after October 1, 2011, the October 1, 2011 amendment created two classes of jail inmates: (1) those who were awarded one-for-one conduct credits because they committed a crime on or after October 1, 2011; and (2) those who, like him, were awarded conduct credits under the less generous one-for-two formula because they committed a crime before October 1, 2011. The "unequal" treatment of these two similarly situated groups, appellant argues, denied him, a member of the second group, the equal protection of the laws. We disagree.

"The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution both prohibit the denial of equal protection of the laws. 'The equal protection guarantees of [both Constitutions] are substantially equivalent and analyzed in a similar fashion' [citation], and they unquestionably apply to penal statutes [citation]." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 674 (*Cruz*).)

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, '"[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."' [Citation.] 'This initial inquiry is not

4

whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'" (*People v. Brown* (2012) 54 Cal.4th 314, 328 (*Brown*).) "If the first prerequisite is satisfied, we proceed to judicial scrutiny of the classification." (*Rajanayagam, supra*, 211 Cal.App.4th at p. 53.) To determine the correct level of scrutiny to apply to a legislative classification, we apply the following principles:

"'[W]hen reviewing legislative classifications under the equal protection clauses of the California and United States Constitutions, the legislation under examination is generally clothed in a presumption of constitutionality. However, once it is determined that the classification scheme affects a fundamental interest or right, the burden shifts; thereafter the state must first establish that it has a compelling interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose. [Citations.]'" (*Cruz, supra*, 207 Cal.App.4th at p. 675, quoting *People v. Olivas* (1976) 17 Cal.3d 236, 251 (*Olivas* ).) By contrast, "'Where the statutory distinction at issue neither 'touch[es] upon fundamental interests' nor is based on gender, there is no equal protection violation 'if the challenged classification bears a rational relationship to a legitimate state purpose. [Citations.]' [Citation.] That is, where there are plausible reasons for the classification, our inquiry ends.'" [Citation.] Accordingly, to sustain an equal protection challenge ... it must be shown that the classification scheme is irrational." (*D.M. v. Department of Justice* (2012) 209 Cal.App.4th 1439, 1450, fn. omitted.)

We assume without deciding, as appellant contends, that those who earn conduct credits at the enhanced rate because their crimes occurred on or after October 1, 2011, and those (like appellant) who do not earn conduct credits at the enhanced rate because their crimes occurred before that date are similarly situated for purposes of equal protection analysis. Accordingly, we now turn to the question, which appellant does not

5

address, of the appropriate level of judicial scrutiny to be applied to the challenged classification.**4**

In *Rajanayagam*, the court rejected an equal protection challenge to the October 11, 2011 amendment. The court there first held that "the statutory distinction at issue neither touches upon fundamental interests nor is based on gender," and therefore, "there is no equal protection violation if the challenged classification bears a rational relationship to a legitimate state purpose." (*Rajanayagam, supra*, 211 Cal.App.4th at p. 53; accord, *People v. Kennedy* (2012) 209 Cal.App.4th 385, 397 (*Kennedy*).) We agree.

Next the court applied the rational relationship standard. We quote from the *Rajanayagam* court's analysis on this point at length:

"It is undisputed the purpose of section 4019's conduct credits generally is to affect inmates' behavior by providing them with incentives to work and behave. (*Brown*,

---

**4** In *Brown, supra*, 54 Cal.4th 314, our Supreme Court rejected an equal protection challenge to the version of section 4019 that preceded former section 4019. In *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*), the defendant served a period of presentence confinement before, on and after October 1, 2011, and this court, stating "We can find no reason *Brown's* conclusions and holding with respect to the [amendment before the court in *Brown*] should not apply with equal force to the October 1, 2011, amendment" (*id*. at p. 1552), rejected the defendant's equal protection claim that he was entitled to enhanced credits under the October 1, 2011, amendment for the entire presentence confinement period, including the period on and after October 1, 2011. The court in *Rajanayagam, supra*, 211 Cal.App.4th 42 reached a different conclusion. There, as in *Ellis*, the confinement period straddled October 1, 2011, and the defendant effectively conceded he was not entitled to the portion of his presentence confinement that predated October 1, 2011. The court found the two groups in question—"(1) those defendants who are in jail on and/or after October 1, 2011, who committed an offense on or after October 1, 2011, and (2) those defendants who are in jail on and/or after October 1, 2011, who committed the same offense *before* October 1, 2011"—were "similarly situated for purposes of the October 1, 2011, amendment ...." (*Rajanayagam, supra*, at p. 53.) Because we assume without deciding the two groups in question are similarly situated, we need not address these conflicting positions on the issue.

6

*supra*, 54 Cal.4th at pp. 327–329.)  But that was not the purpose of Assembly Bill No. 109, which was part of the Realignment Act.... [T]he Legislature's stated purpose for the Realignment Act 'is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' [Citation.]  Section 17.5, subdivision (a)(7), puts it succinctly: 'The purpose of justice reinvestment is to manage and allocate criminal justice populations more *cost-effectively*, generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders accountable.' (Italics added.)" (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54-55.)

As did the court in *Rajanayagam*, "We conclude the classification in question does bear a rational relationship to cost savings." (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 55.)  "Preliminarily, we note the California Supreme Court has stated equal protection of the laws does not forbid statutes and statutory amendments to have a beginning and to discriminate between rights of an earlier and later time.  (*People v. Floyd* (2003) 31 Cal.4th 179, 188 (*Floyd* ) ['[d]efendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense'].)  Although *Floyd* concerned punishment, we discern no basis for concluding differently here." (*Ibid.*; accord, [*Kennedy*, *supra*, 209 Cal.App.4th at pp. 398-399] ["Although [the 2011 amendment] does not ameliorate punishment for a particular offense, it does, in effect, ameliorate punishment for all offenses committed after a particular date"].)

"More importantly, in choosing October 1, 2011, as the effective date of Assembly Bill No. 109, the Legislature took a measured approach and balanced the goal of cost savings against public safety.  The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011.  To

be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. (*Floyd*, *supra*, 31 Cal.4th at p. 190 [Legislature's public purpose predominate consideration].) Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 55-56; accord, *Kennedy*, *supra*, 209 Cal.App.4th at p. 399 [in making changes to custody credits earning rates "the Legislature has tried to strike a delicate balance between reducing the prison population during the state's fiscal emergency and protecting public safety," and "Although such an effort may have resulted in comparable groups obtaining different credit earning results, under the rational relationship test, the Legislature is permitted to engage in piecemeal approaches to statutory schemes addressing social ills and funding services to see what works and what does not"].)

In addition, we find a second rational basis for the classification at issue. On this point we follow the reasoning and result in *Kennedy*, *supra*, 209 Cal.App.4th 385. The court's analysis there began with *In re Kapperman* (1974) 11 Cal.3d 542 (*Kapperman*). In that case, the *Kennedy* court noted, "our Supreme Court ... acknowledged 'statutes lessening the punishment for a particular offense' may be made prospective only without offending equal protection principles. (*Kapperman*, *supra*, 11 Cal.3d. at p. 546.)" (*Kennedy*, at p. 398.) Moreover, "the [*Kapperman*] court wrote that the Legislature may rationally adopt such an approach, 'to assure that penal laws will maintain their desired

8

deterrent effect by carrying out the original prescribed punishment as written.' (*Ibid.*)."
(*Ibid.*, fn. omitted.)

The *Kennedy* court then discussed *People v. Floyd* (2003) 31 Cal.4th 179: "In [that case], the defendant sought to invalidate a provision of Proposition 36 barring retroactive application of its provisions for diversion of nonviolent drug offenders. [Citation.] The court reiterated that the Legislature may preserve the penalties for existing offenses while ameliorating punishment for future offenders in order to '"assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written."' [Citation.] The statute before the court came within this rationale because it 'lessen[ed] punishment for particular offenses.' [Citation.] As the *Floyd* court noted, '"[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." [Citation.]'" (*Kennedy*, *supra*, 209 Cal.App.4th at p. 398.)

*Kennedy* gleaned from *Kapperman* and *Floyd* the following: "[T]he rule ... is that a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection, because the Legislature will be supposed to have acted in order to optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them." (*Kennedy*, *supra*, 209 Cal.App.4th at p. 398.) The court acknowledged that the October 1, 2011 amendment "does not ameliorate punishment for a particular offense," but, the court stated, "it does, in effect, ameliorate punishment for all offenses committed after a particular date." (*Kennedy*, *supra*, at pp. 398-399.) Accordingly, the court concluded: "By parity of reasoning to the rule acknowledged by both the *Kapperman* and *Floyd* courts, the Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed

9

before that date.  To reward appellant with the enhanced credits of the October 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes. We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed."  (*Id*. at p. 399.)  This rationale articulated above constitutes a second rational basis for the legislative classification at issue.

For the forgoing reasons, we conclude that calculating appellant's conduct credits under former section 4019 rather than under the October 1, 2011 amendment did not violate appellant's equal protection rights.

## DISPOSITION

The judgment is affirmed.