Filed 11/5/13  P. v. Evans CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONALD EUGENE EVANS,<br><br>    Defendant and Appellant. | A133916<br><br>(Del Norte County<br>Super. Ct. No. CRF-119465) |

On August 22, 2011, defendant Ronald Evans was arrested following numerous alleged instances of domestic violence between him and his then girlfriend.  He was acquitted of the domestic violence charges but convicted of possession of a firearm by a felon.  On November 17, the trial court sentenced him to five years in state prison, awarding him 105 days credit for time served, comprised of 88 actual days in custody and 17 conduct credits.

On appeal, Evans challenges the trial court's calculation of his credits on two separate grounds.  First, he contends that the trial court erroneously limited his conduct credits to 20 percent of his actual days in custody, a limitation, he claims, applicable only to postsentence conduct credits.  Second, he argues that the trial court should have applied a "hybrid" calculation to his time in custody, applying one formula for the period ending September 30, and a different formula for the period commencing October 1.  This was so, he reasons, because the statute governing conduct credits was amended effective October 1, 2011, becoming more favorable to defendants on that date.

1

We agree with Evans's first argument and reject his second. We order the abstract of judgment amended to reflect 44 days of conduct credits, for a total of 132 credits. In all other regards, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because Evans only challenges the calculation of his custody credits, the circumstances surrounding his arrest and conviction are largely irrelevant to the issues before us. We therefore set them forth with brevity.

Evans and Brandi Lee Nored were involved in what Evans himself describes as a "brief but volatile" relationship, one that lasted just three months, with four or five breakups during that short time.

Sometime between June 15 and July 15, 2011, Evans and Nored were involved in an argument. The trial testimony was contradictory as to who was the aggressor. Nored testified that during the argument, Evans poured gasoline on her head and told her he was going to light her on fire. William Lemmon—a friend of Evans's—testified that Nored was in fact the one who had the jar of gasoline and that she got angry at Evans and started "going off" on him. When Evans and Lemmon went to leave, Nored threatened that she was going to pour the gasoline out and ignite it so she and Evans would both burn up. Evans corroborated Lemmon's version of the incident.

There followed another incident and, again, the testimony was contradictory as to who was the aggressor. According to Nored, during another argument, Evans pulled a pocketknife from his pocket and poked her with it, stating, "[P]ick a spot where you want to be stabbed because you're going to get stabbed. You're going to die." Lemmon again refuted Nored's version of the incident, testifying that Nored, upset that he and Evans were going out, grabbed a knife, and threatened Evans that he was "not going anywhere." Lemmon opened the door and stepped between Evans and Nored so Evans could get out of the house.

In yet a third incident, Nored's son, Blake, testified that in the midst of another argument, his mother punched Evans, and Evans punched her back and hit her with the butt of a shotgun. He then shot at the ground between and in front of Nored's feet. A

2

neighbor also testified that she saw Evans hit Nored with a gun in her temple and shoot it. Nored's testimony was similar.

Evans testified that Nored had the shotgun and pointed it at him. He claimed that when he took it from her, he might have accidentally hit her in the head, discharging the gun.

On another occasion, Evans picked up Blake and took him to go target shooting. According to Blake, he was shooting a 20-gauge shotgun, while Evans was shooting a 12-gauge shotgun. Nored testified that the 12-gauge shotgun belonged to Evans and was at her house. According to Evans, however, he hated guns and had broken the shotgun into pieces, also denying that he was around when people were target shooting.

Evans was arrested on August 22, 2011 and remained in custody until trial. He was charged with assault with a firearm (counts 1 and 2); making a criminal threat (counts 3, 6, and 9); possession of a firearm by a felon (count 4); assault with a deadly weapon (count 5); false imprisonment by violence (count 7); and assault with a knife (count 8). As to count 3, it was specially alleged that Evans used a firearm in the commission or attempted commission of a felony. As to count 9, it was specially alleged that he had a conviction for a serious felony, had served a prior prison term, and had a prior strike conviction.

Trial commenced on October 17, 2011, and concluded two days later. The jury found Evans guilty of possession of a firearm by a felon, and acquitted him of all remaining charges. Evans waived his right to a jury trial on the special allegations, and the court found them to be true.

On November 15, 2011, the probation department submitted its presentence investigation report. As pertinent here, the report represented that Evans had served 88 days in actual custody and had "credit in the amount of 17 days for a total of 105 days custodial credit. (Credits calculated at 20 percent pursuant to 1170.12(a)(b)(5) PC.)"

3

On November 17, 2011, Evans was sentenced to five years in state prison. As recommended in the probation report, the court awarded credit for 88 days of actual custody, plus 17 conduct credits, for a total of 105 days custodial credit.

This timely appeal followed.

## DISCUSSION

**The Trial Court Erred In Awarding Evans Only 17 Days of Conduct Credit**

At the time of Evans's offense, Penal Code section 4019[1] provided that a defendant was entitled to one day of work participation plus one day of good behavior for every six days of custody. (§ 4019, former subds. (b), (c), & (f); Stats. 2010, ch. 426, § 2, eff. Sept. 28, 2010.) He served 88 days in custody between his arrest on August 22, 2011 and sentencing on November 17, 2011. He was thus entitled to 44 days of conduct credit, calculated as follows: 88 divided by 4 equals 22 multiplied by 2 equals 44. (See *In re Marquez* (2003) 30 Cal.4th 14, 26 [describing the formula for calculating conduct credits]; *People v. Bravo* (1990) 219 Cal.App.3d 729, 732-735 [same]; *People v. Smith* (1989) 211 Cal.App.3d 523, 527 [same].) Adding the 44 days of conduct credit to the 88 days of actual custody, Evans was entitled to 132 days of credit, rather than the 105 awarded by the court.

As noted, the court derived its incorrect numbers from the probation report, which advised that, pursuant to section 1170.12, subdivision (a)(b)(5), Evans's conduct credits were limited to 20 percent, a limitation applicable to defendants serving their sentences under the Three Strikes law. As the People concede here, that limitation does not apply to presentence conduct credit. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 32 ["We recently held that restrictions on the rights of Three Strikes prisoners to earn term-shortening credits do not apply to confinement in a local facility prior to sentencing."]; *People v. Thomas* (1999) 21 Cal.4th 1122, 1125-1126 ["By its terms, section 1170(a)(5) does not address presentence conduct credits for those defendants sentenced under the three strikes law."].)

---

[1] All subsequent statutory references are to the Penal Code.

**The Trial Court Correctly Applied the Version of Section 4019 In Effect on the Date of Evans's Offense to His Entire Custodial Time**

Evans committed his offense in May or June 2011 and was arrested on August 22, 2011. At that time the Penal Code provided for two days of credit for every six days served. (§ 4019, former subds. (b), (c), & (f); Stats. 2010, ch. 426, § 2, eff. Sept. 28, 2010.) Effective October 1, 2011, section 4019 was amended to provide for two days of credit for every four days served.[2] (§ 4019, subds. (b), (c), & (f); Stats. 2011, ch. 15, § 482, eff. Apr. 4, 2011, operative Oct. 1, 2011.) Evans argues that the old formulation should have applied to the time he was in custody from August 22 to September 30, and the amended, more generous formulation should have applied to from October 1 to November 17, when he was sentenced. Evans claims this "hybrid" calculation is supported by the language of amended section 4019 and the Equal Protection clause.

Turning first to his statutory construction argument, Evans concedes that this argument has previously been considered—and squarely rejected—in *People v. Ellis* (2012) 207 Cal.App.4th 1546. There, defendant Ellis entered into a plea agreement on September 9 and was sentenced on October 13, 2011. He was awarded 91 days of actual custody credits plus 44 days of conduct credit. (*Id.* at p. 1549.) On appeal, Ellis contended that the conduct credits should have been calculated based on the version of section 4019 that was operative at the time of his sentencing. (*Ibid.*) The Fifth District disagreed. It examined the statutory language, particularly section 4019, subdivision (h), which provides: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." The court held that, given this language, "the Legislature's clear intent was to have the enhanced rate apply *only* to those

---

[2] Section 4019 has been the subject of numerous amendments, a summary of which can be found in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48–49 (*Rajanayagam*).

defendants who committed their crimes on or after October 1, 2011.  [Citation.]  The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits.  So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced." (*People v. Ellis, supra,* 207 Cal.App.4th at p. 1553.)

At least two other cases have also reached the same conclusion.  In *Rajanayagam, supra,* 211 Cal.App.4th at pp. 51–52, the Fourth District provided this well-reasoned analysis[3]:

"Subdivision (h)'s first sentence states:  'The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.'  (Italics added.)  After declaring itself to operate 'prospectively,' the first sentence explicitly states the conduct credit amendment applies only to defendants whose crimes were committed 'on or after October 1, 2011.' (Subd. (h).)  By the first sentence's plain language, section 4019 would not apply to Rajanayagam because he committed his crime prior to October 1, 2011.  Thus, the first sentence leads unmistakably to the conclusion Rajanayagam is not entitled to conduct credit at the enhanced rate.  Subdivision (h)'s second sentence, however, confuses matters.  But the application of well-settled principles of statutory construction confirms our conclusion Rajanayagam is not entitled to enhanced conduct credits for time served on or after October 1, 2011, because he committed his crime before the effective date.

---

[3] In *Rajanayagam*, defendant conceded that the language of section 4019, subdivision (h) defeated a claim that he was statutorily entitled to enhanced credits under the October 1, 2011 amendment, and on appeal he asserted only an equal protection challenge.  (*Rajanayagam, supra,* 211 Cal.App.4th at p. 47.)  According to the court, however, "a thorough discussion of the credit issues required" it to discuss the statutory language.  (*Id.* at p. 48, fn. 3.)

"Subdivision (h)'s second sentence provides: 'Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.' (Subd. (h).)  Arguably the statement '[a]ny days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law' implies any days earned by a defendant *after* October 1, 2011, shall be calculated at the rate required by the current law, *regardless of when the offense was committed*.  But to read the second sentence in this manner renders meaningless the first sentence.  This we cannot do.

" ' " 'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.'  A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." '  [Citations.]  Therefore, we cannot read the second sentence to imply any days earned by a defendant after October 1, 2011, shall be calculated at the enhanced conduct credit rate for an offense committed before October 1, 2011, because that would render the first sentence superfluous.

"Instead, another well-established rule of statutory construction supports our interpretation of subdivision (h).  ' "A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent.  Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.  Thus, it is not proper to confine interpretation to the one section to be construed." '  [Citations.]

"As we explain above, subdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who committed their crimes on or after October 1, 2011.  Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011.  Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law.  However inartful the language of subdivision (h), we read the

7

second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1553.) To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence."

And, similarly, in *People v. Kennedy* (2012) 209 Cal.App.4th 385, 400, the Sixth District rejected the argument that a defendant was statutorily entitled to increased presentence conduct credits for the time in custody after October 1, 2011, reiterating that the language of section 4019, subdivision (h) is clear that the amendment to section 4019 applies only to "crimes committed on or after October 1, 2011."

We find the holdings of *Ellis*, *Rajanayagam*, and *Kennedy* persuasive, and we likewise conclude that, per the language of section 4019, the enhanced credits provided for by the October 1, 2011 amendment apply only to defendants who committed their crimes on or after October 1, 2011.

As to Evans's equal protection argument, that, too, has been rejected, this time by the California Supreme Court. In *People v. Brown* (2012) 54 Cal.4th 314, 328–329, the court considered the amendment to section 4019 that became operative on January 25, 2010, holding that the prospective application of a beneficial change in conduct credits does not violate equal protection principles . More recently, the court in *Rajanayagam, supra,* 211 Cal.App.4th at pp. 53–56 rejected an equal protection challenge to prospective application of the October 1, 2011 amendment of section 4019. We see no reason these holdings do not govern here.

## DISPOSITION

The abstract of judgment shall be amended to reflect 44 days of conduct credit in addition to 88 days of custodial time, for a total of 132 credits. In all other regards the judgment is affirmed.

8

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Haerle, J.