Filed 11/29/23  P. v. Trejo CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MANUEL TREJO,<br><br>Defendant and Appellant. | B320712<br><br>(Los Angeles County<br>Super. Ct. No. BA420112) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frederick N. Wapner, Judge.  Affirmed as modified.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Manuel Trejo contends that his trial counsel provided ineffective assistance by failing to ask for a pretrial diversion eligibility hearing under Penal Code[1] section 1001.36. We conclude that the record fails to establish his counsel provided ineffective assistance. However, we modify the judgment to correct custody credits.

## BACKGROUND

This case arose from Trejo's robbery of a store. Our Division described the events in *People v. Trejo* (Sept. 11, 2017, B271528) [nonpub. opn.] (*Trejo I*):

"Ana Cisneros worked at the Family Dollar Store. At approximately 6:15 p.m. on December 15, 2013, Trejo, wearing a scarf over his mouth and nose, was in the store. It being cold outside, Cisneros initially thought nothing of Trejo's attire. But, as Cisneros walked toward the cash registers, Trejo told Cisneros to 'listen.' He showed Cisneros something wrapped in a black stocking. Although Cisneros could see only a metal handle, it appeared to be a gun. Another witness, however, saw Trejo lift his shirt to reveal a gun. Trejo took $108 from a cash register. When Cisneros told Trejo she could not open another cash register without the code, he 'backed away.' Trejo took a handful of beef jerky before leaving.

"Almost two hours later, Deputy Sheriff Eva Robles saw Trejo driving a car that had been connected to a domestic violence investigation. Robles activated her car's lights and sirens, but Trejo did not yield. Instead, Trejo's car continued through intersections and stop signs at approximately 40 miles

---

[1]     All further undesignated statutory references are to the Penal Code.

per hour.  Trejo's car crashed into a parked vehicle, but he continued on, eventually stopping.  Robles found Jack Link's beef sticks in Trejo's car." (*Trejo I*, *supra*, B271528.)

 In 2015, Trejo pleaded guilty to second degree robbery (§ 211) with a gun (§ 12022.53, subd. (b)), and to evading an officer, willful disregard (Veh. Code, § 2800.2, subd. (a)).  Trejo also admitted having two prior robbery convictions within the meaning of the Three Strikes law, three prior prison terms (§ 667.5, subd. (b)), and two prior convictions of a serious felony (§ 667, subd. (a)(1)).

 At his original sentencing hearing in 2016, the trial court denied Trejo's *Romero*[2] motion but nonetheless said that Trejo seemed "like a decent enough guy," and the trial court would have liked to have done something for him.  The trial court also referred to Trejo's "documented history of mental illness" for which he had been previously treated and gone to Patton State Hospital.  Still, medication was controlling Trejo's mental illness, although the trial court had "no doubt" it contributed to his crime.  The trial court then sentenced Trejo to "46 years and four months" in prison.

 This Division affirmed Trejo's judgment of conviction, rejecting his argument that the trial court erred in denying his *Romero* motion.  (*Trejo I*, *supra*, B271528.)  After granting review, the California Supreme Court transferred the matter to us with the direction to vacate our decision and reconsider the matter in light of Senate Bill No. 620, which gave trial courts discretion to strike certain firearm enhancements.  We accordingly remanded the matter to the trial court to reconsider

---

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

3

the sentence. (*People v. Trejo* (Mar. 19, 2018, B271528) [nonpub. opn.] (*Trejo II*).)

At the March 2019 resentencing hearing, the trial court referred to psychiatric reports that had been submitted at the original sentencing hearing. The trial court described the case as unusual and observed that during the robbery, Trejo had held a door open for a female customer, "So he's an armed robber; but he's a nice armed robber, and he was polite. And he was nice in court. And he had been doing well on parole for the short time. And so even though his record is terrible, he's going to get, in any event, a severe sentence." The trial court struck a 10-year term under section 12022.53, subdivision (b), and resentenced Trejo to "36 years and four months." Trejo's trial counsel did not request pretrial diversion.

Trejo appealed again, this time contending that the matter should be remanded so that the trial court could exercise its discretion to strike or to dismiss the section 667, subdivision (a)(1), enhancements, in light of Senate Bill No. 1393, which had just become effective. This Division agreed and remanded the matter for reconsideration of Trejo's sentence. (*People v. Trejo* (Feb. 7, 2020, B297172) [nonpub. opn.] (*Trejo III*).)[3] At the March 16, 2022 resentencing hearing, the trial court struck the two 5-year priors, thus resentencing Trejo to 25 years to life on count 1 and 16 months on count 2. Trejo's counsel again did not raise pretrial diversion under section 1001.36.

---

[3] At Trejo's request, we take judicial notice of the records in *Trejo I, Trejo II*, and *Trejo III*. (Evid. Code, § 452, subd. (d).)

## DISCUSSION

I.    Pretrial diversion

Trejo contends his trial counsel provided ineffective assistance by failing to request pretrial diversion under section 1001.36.  We disagree.

Section 1001.36 became effective in 2018 (stats. 2018, ch. 34, § 24), and it applies retroactively to judgments not final when it became effective (*People v. Frahs* (2020) 9 Cal.5th 618, 624).  Under it, defendants with qualifying mental disorders may be eligible for a pretrial diversion program.  (See generally *Frahs*, at p. 626.)  " 'Pretrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment."[4]  (§ 1001.36, subd. (f)(1).)  A defendant is eligible for pretrial diversion if two criteria are met.  First, the defendant has been diagnosed with a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, and defense counsel has provided evidence of that disorder, including a diagnosis within the last

---

[4]    While this matter was pending on appeal, our California Supreme Court held that a diversion request must be made before jeopardy attaches at trial or the entry of a guilty or no contest plea, whichever occurs first.  (*People v. Braden* (2023) 14 Cal.5th 791, 799.)  Here, Trejo entered his plea in 2015, before section 1001.36 became effective.  Since entering his plea, the judgment has yet to become final due to the ongoing appellate proceedings.  We need not decide what, if any, impact *Braden* has on this matter, as we ultimately conclude Trejo has not shown entitlement to relief on appeal.

five years by a qualified mental health expert.  (§ 1001.36, subd. (b)(1).)  Second, the defendant's disorder was a significant factor in the commission of the charged offense.  (§ 1001.36, subd. (b)(2).)  If the defendant has been diagnosed with a disorder, then a court shall find that the disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence it was not a motivating, causal or contributing factor to the defendant's involvement in the alleged offense.  (*Ibid.*)

If a defendant satisfies the eligibility requirements, then the court must consider the defendant's suitability for pretrial diversion, which requires meeting four criteria.  (§ 1001.36, subd. (c).)  First, a mental health expert has found that the defendant's disorder would respond to mental health treatment.  (§ 1001.36, subd. (c)(1).)  Second, the defendant consents to treatment.  (§ 1001.36, subd. (c)(2).)  Third, the defendant agrees to comply with treatment as a condition of diversion, unless the defendant is incompetent to consent.  (§ 1001.36, subd. (c)(3).)  Fourth, the defendant will not pose an unreasonable risk of danger to public safety.  (§ 1001.36, subd. (c)(4).)

Trejo concedes that his trial counsel never asked for pretrial diversion.  He therefore contends that his counsel provided ineffective assistance.  To establish a claim of ineffective assistance of counsel, a defendant must establish both that (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms, and (2) prejudice, meaning a reasonable probability that but for counsel's deficient performance the outcome would have been different.  (See generally *Strickland v. Washington* (1984) 466 U.S. 668; *People v. Bell* (2019) 7 Cal.5th 70, 125.)  When an

6

ineffective assistance of counsel claim is raised on direct appeal, the record must affirmatively establish that counsel had no rational tactical reason for the challenged act or omission, counsel failed to provide a reason, or there could be no satisfactory explanation. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Otherwise, claims of ineffective assistance of counsel are better resolved in a habeas corpus proceeding. (*Ibid.*)

The record here of Trejo's mental health condition is limited. To be sure, the record alludes to a mental illness; for example, at the original sentencing hearing in 2016, the trial court referred to Trejo's documented mental illness that medication was controlling; psychiatric reports were apparently submitted at the 2016 sentencing hearing; and Trejo's probation report notes he had been previously classified as mentally disturbed while incarcerated and was admitted to Patton State Hospital in 1995. Still, the record does not state the precise nature of Trejo's mental illness, that any diagnosis remained valid in 2016, and that Trejo would have agreed to diversion and to treatment.[5] While the trial court did suggest at the 2016 sentencing hearing that Trejo's mental illness contributed to his crime, it did not consider the precise issue whether it was a

---

[5] Although we have taken judicial notice of the records in *Trejo I, II, and III*, Trejo has not cited anything in those records to support his argument, and we have found no supporting documents that, for example, show what Trejo's disorder is. Instead, in his declaration in support of the *Romero* motion, Trejo's trial counsel vaguely referred to Trejo's "long history of drug abuse and mental illness" and that Trejo had been deemed incompetent under section 1368 but was later found to be competent to stand trial after an evaluation. The file relating to the competency proceedings was "not accessible."

"significant factor" in its commission. Nor does the record contain an explanation from trial counsel why he did not request pretrial diversion in 2019, when the matter was remanded for resentencing. We therefore conclude that the record does not establish that Trejo's trial counsel provided ineffective assistance.

However, if there is evidence outside this appellate record that defense counsel was ineffective for failing to seek diversion under section 1001.36, then Trejo may pursue any such claim through a writ of habeas corpus. (*People v. Mai*, *supra*, 57 Cal.4th at p. 1009.)

II. Custody credits

A defendant convicted of a felony or misdemeanor shall be credited for all days in custody. (§ 2900.5, subd. (a); *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) Days in custody include the day of arrest through and including the day of sentencing. (*Rajanayagam*, at p. 48.) Trejo was arrested on December 16, 2013 and was most recently resentenced on March 16, 2022. He is therefore entitled to 3,013 actual days of custody credit and 127 days of presentence custody credits, instead of the 2,165 actual days of custody credit and zero days of presentence custody credits the trial court awarded.

## DISPOSITION

The judgment is modified to reflect that Manuel Trejo is entitled to 3,013 actual days of custody credit and 127 days of presentence custody credit.  In all other respects, the judgment is affirmed.  The clerk of the superior court is ordered to prepare an amended abstract of judgment reflecting the corrected custody credits and to forward it to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

ADAMS, J.

9